497 So.2d 1282 (1986)
Bill DeCOSTA, Appellant,
v.
NORTH BROWARD HOSPITAL DISTRICT, a Special Tax District of the State of Florida, Appellee.
No. 85-2285.
District Court of Appeal of Florida, Fourth District.
November 12, 1986.
Rehearing Denied December 12, 1986.
Henry J. Martocci, Merritt Island, for appellant.
Jerome R. Silverberg of Gibbs & Zei, P.A., Fort Lauderdale, for appellee.
WALDEN, Judge.
This appeal involves the issue of whether an unwed father, who acknowledges paternity of his illegitimate child, is financially liable for reasonable and necessary emergency medical services rendered to his child. The trial court found that he was liable. We affirm.
On September 25, 1978, Yolanda Ramirez, also known as Yolanda DeCosta, gave birth to an extremely small, underdeveloped and premature infant girl at Plantation General Hospital. The infant girl was transferred to Broward General Medical Center, which had the necessary life support equipment and facilities.
*1283 The Broward General Medical Center treated the infant girl from September 25, 1978, until October 4, 1978, when the infant girl died. The hospital and medical services provided to the child were reasonable and necessary emergency medical services. The charges incurred for the rendered hospital services were in the amount of $8,237.50.
At the time the infant girl was born, Yolanda Ramirez was an unmarried woman. However, Bill DeCosta, appellant, was the natural father of the infant girl, and he stipulated to his paternity. His name appeared on the child's birth certificate as the father. On October 25, 1981, appellant and Yolanda Ramirez married.
The North Broward Hospital District, appellee, filed a complaint against both Yolanda Ramirez and appellant seeking a reimbursement of $8,237.50 for medical services rendered to the infant girl. The trial court entered a final judgment against Yolanda Ramirez and appellant, finding them jointly and severally liable for the entire sum.
Appellant asserts that neither common law nor statutory law imposes a duty on him to support his infant child. Under common law, appellant argues, the putative father of an illegitimate child has neither rights nor obligations towards the illegitimate child. See Clarke v. Blackburn, 151 So.2d 325 (Fla. 2d DCA 1963); Carpenter v. Sylvester, 267 So.2d 370 (Fla. 3d DCA 1972); and Ford v. Loeffler, 363 So.2d 23 (Fla. 3d DCA 1978).
This is a correct statement of the common law; however, it is not applicable to the appellant. Appellant is not a putative father. A putative father is the alleged or reported father of an illegitimate child. Black's Law Dictionary 1113 (5th ed. 1979). In the instant case, appellant is the admitted father of the infant girl. As such, the common law places the primary duty of support and maintenance of the infant girl on him, the father. See Frazier v. Frazier, 109 Fla. 164, 147 So. 464 (1933).
Furthermore, the statutory law dictates that the appellant is a natural guardian of the infant girl. As a natural guardian, appellant has a legal duty to support the child. Section 744.301(1), Florida Statutes (1985), states:
(1) The mother and father jointly are natural guardians of their own children and of their adopted children, during minority. If one parent dies, the natural guardianship shall pass to the surviving parent, and the right shall continue even though the surviving parent remarries. If the marriage between the parents is dissolved, the natural guardianship shall belong to the parent to whom the custody of the child is awarded. If the parents are given joint custody, then both shall continue as natural guardians. If the marriage is dissolved and neither the father nor the mother is given custody of the child, neither shall act as natural guardian of the child. The mother of a child born out of wedlock is the natural guardian of the child.
Appellant contends that pursuant to this section, the natural mother is the only guardian of the infant girl, because the child was born out of wedlock. However, appellant misconstrues section 744.301(1).
The purpose of section 744.301(1) is to protect the interests of the child. Ideally, a child would be best provided for by both his mother and father. A marriage certificate is not a requirement to being a mother or a father. Accordingly, the first sentence of section 744.301(1) must be read to apply to the situation where both the father and mother are known, regardless of whether the parents are married. Where the father is unknown or is unwilling to voluntarily acknowledge paternity, the last sentence applies. In that case, the only known parent, the natural mother, must be designated the guardian to protect the interests of the child.
Applying this interpretation to the instant case, it is clear that the absence of a marriage certificate at the time of birth is irrelevant to the appellant's statutory duty to support. Appellant is the acknowledged father of the infant girl. He, therefore, has a legal duty to support his child.
Appellant's duty to support includes the obligation to nurture, support, *1284 educate, protect and provide reasonable and necessary medical attention for his child. See Kern v. Kern, 360 So.2d 482 (Fla. 4th DCA 1978); Variety Children's Hospital, Inc. v. Vigliotti, 385 So.2d 1052 (Fla. 3d DCA 1980); and Morton F. Plant Hospital Association v. McDaniel, 425 So.2d 1213 (Fla. 2d DCA 1983). When the hospital rendered the medical services to the infant girl, appellant received a legal benefit. His duty to provide reasonable and necessary medical attention for his child was fulfilled. Appellant would be unjustly enriched if he were allowed to enjoy that benefit without compensating the hospital. Thus, a contract implied in law existed between appellant and the hospital, from which the hospital could recover its monies for the medical services rendered to the infant girl. See Vigliotti.
Based on the foregoing, we find that the trial court was correct in holding appellant liable for the medical services rendered to his illegitimate infant girl. The decision of the trial court is
AFFIRMED.
HERSEY, C.J., and DOWNEY, J., concur.